HAMITER, Justice
(dissenting).
Counsel for relators conceded in oral argument that if the assailed Act No. 170 of 1952 had been so worded that its benefits would be available to all parishes throughout the state it would then be constitutional. However, they contend, and the majority of this court have held, that when the statute was made to apply exclusively to Jefferson Parish there resulted a violation of Section 3 of Article 14 of the Louisiana Constitution, LSA, because, according to their interpretation, such section requires that whatever optional plans are offered must be available to all parishes throughout the state.
I cannot subscribe to that interpretation. The mentioned section merely recites that the Legislature shall provide optional plans for the organization of parochial govern *805 ment, and that any parish may change from one plan, so prescribed, to another, when authorized by a majority of the electors voting at an election held for such purpose. There is nothing in this language, as I view it, which even implies that optional plans afforded the various parishes must be state-wide in scope or that the organization of those subdivisions shall be uniform. Had such been the intention of the framers of the Constitution it seems apparent that our basic law would have set out the several forms of parochial government to be permitted and then required that the parishes should be organized according to one or another of them.
In view of the reference made to “any parish” the constitutional provisions, as I construe them, simply mean that a (any one) parish may change from a plan prescribed by the Legislature to another so prescribed irrespective of whether the optional plan made available was drafted particularly for that parish or generally for all parishes. If this were not intended surely there would have been used a phrase such as “each and every parish” may change etc., rather than the phrase “any parish”.
And there appears no good reason why my construction would be contrary to sound governmental operations. Indeed, the purpose of the constitutional provision is to afford optional plans of government so that each parish might determine what form best suits its needs and have its government tailored to suit those needs. In this connection it is important to notice that no restrictions as to the number or kinds of the optional plans to be provided were placed therein. Most assuredly if the framers had intended the provisions to limit the number and kinds of parochial governments which might be authorized there would have been a proviso setting forth the limitation.
In the absence of such a limitation unquestionably (even under the interpretation of relators herein) the Legislature could legally provide 64 general optional plans wholly dissimilar to each other, thereby permitting the respective 64 parishes of the state to have governments unlike one another. This being true I can see no objection, constitutional or otherwise, to the furnishing of 64 separate plans (or a lesser number) each of which to be made applicable specifically to a particular parish in accordance with its needs.
Therefore, I think that in the enactment of Act 170 of 1952 the Legislature has done exactly what was contemplated by the mentioned constitutional provisions. It provided an optional plan of government for Jefferson Parish and required that' if'be submitted to the electors of that parish before its becoming effective (incidentally the electorate adopted the plan overwhelmingly).
*807 In my opinion the district judge correctly dismissed the suit and his judgment should be affirmed.
I respectfully dissent.